wo

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David William Flahive, | No.  CV 19-04834-PHX-DWL (MHB) |
| Plaintiff, | |
| v. | **ORDER** |
| Corizon Health Services, et al., | |
| Defendants. | |

Plaintiff David William Flahive, who is currently confined in the Arizona State Prison Complex-Lewis, brought this civil rights action pursuant to 42 U.S.C. § 1983. Two of the defendants, Centurion of Arizona, L.L.C. ("Centurion") and Angela White ("White") (collectively, "Defendants"), have now moved for summary judgment. (Doc. 39.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 41), and he opposes the motion. (Doc. 42.) For the following reasons, the motion will be denied without prejudice.

I.     Background

   A.     **The Complaint**

In the complaint, which was filed on July 26, 2019, Plaintiff alleges that he suffers from Hepatitis-C and raises various claims related to the alleged failure to provide appropriate treatment for this condition. (Doc. 1.)

Specifically, in Count One, Plaintiff alleges that on December 20, 2018, he saw Defendant Ende, a nurse practitioner, for a chronic care appointment but Ende refused to

submit his name to the Hepatitis-C committee and told Plaintiff that he did not qualify for treatment. (*Id.* at 4.) Plaintiff alleges that, as a result, his Hepatitis-C progressed to stage 2 fibrosis and stage 2 liver inflammation, placing him at a greater risk of hepatocellular carcinoma and death. (*Id.*) In Count Two, Plaintiff alleges that on May 13, 2019, Defendant Johnson, a nurse practitioner, denied his request for direct-acting antiviral agent medication ("DAA") to treat and cure his Hepatitis-C and that Defendant Johnson continued refusing to provide DAA after reviewing Plaintiff's blood labs, which indicated stage 2 fibrosis and liver inflammation. (*Id.* at 5.) In Count Three, Plaintiff alleges that on July 4, 2019, he requested that Defendant White, a registered nurse, place him on the provider's line so he could obtain medication to cure his Hepatitis C, but White said that he would not get treatment because "it is too expensive" and "there is a limited supply of drugs" and that Johnson would not see Plaintiff for six months. (*Id.* at 6.) In Count Four, Plaintiff alleges that Corizon has a policy, practice, or custom that resulted in the failure to treat Plaintiff's Hepatitis-C for over five years and that this absence of treatment caused Plaintiff to develop stage 2 fibrosis and liver inflammation. (*Id.* at 7.) In Count Six, Plaintiff alleges that since taking over for Corizon in May 2019, Centurion has also failed to implement protocols to ensure that Plaintiff's Hepatitis-C could be treated and that, despite his many requests for treatment, Centurion has refused to treat his Hepatitis-C. (*Id.* at 9.)

On screening under 28 U.S.C. § 1915A(a), the Court determined that "Plaintiff has stated an Eighth Amendment claim and a state-law malpractice claim against Defendant Ende in Count One, Defendant Johnson in Count Two, and Defendant White in Count Three; Plaintiff has also stated Eighth Amendment claims against Defendant Corizon in Count Four and Defendant Centurion in Count Six." (Doc. 8 at 7.)[1]

…

…

---

[1] The Court also dismissed Count Five, which asserted a deliberate-indifference claim against an additional medical provider. (Doc. 8 at 5-7.)

B.   **The Preliminary Injunction Request**

At the same time he filed his complaint, Plaintiff filed a motion seeking a preliminary injunction to "order ADOC and herein listed defendants" to treat his Hepatitis-C with DAAs. (Doc. 4 at 7.)

On October 9, 2019, Defendants filed an opposition. (Doc. 18.) In a nutshell, Defendants argued that Plaintiff had been seen by medical staff every six months to monitor his Hepatitis-C and that Corizon had not administered DAAs because Plaintiff did not satisfy Corizon's "criteria for Hepatitis C treatment." (*Id.* at 2.) The opposition identified four different Corizon criteria that counseled against the administration of DAAs, including (1) Plaintiff's APRI scores had "consistently been calculated 0.3-0.8 and never over 1.0, which is stable"; (2) Plaintiff had tested negative for Hepatitis-A and Hepatitis-B and had been vaccinated to protect against those conditions; (3) Plaintiff was not suffering from cirrhosis of the liver; and (4) Plaintiff had admitted to substance abuse and tested positive for amphetamines. (*Id.* at 2-3.) The opposition further stated that, although Centurion does not follow the exact same criteria as Corizon (for example, Centurion does not rely on APRI scoring), Plaintiff also failed to qualify for DAA administration under Centurion's criteria, which are "very similar to the triaging of patients for treatment in the community and match[] the most recent HCV Guidelines as published in May 2018 by the AASLD (American Association for the Study of Liver Diseases), and by ISDA (Infectious Diseases Society of America)." (*Id.* at 3.) In support of these assertions, Defendants submitted (1) a declaration from Dr. Wendy Orm, Centurion's statewide medical director (*id.* at 13-15), and (2) a handful of records from Plaintiff's medical visits (*id.* at 16-25).

On October 17, 2019, Plaintiff filed a reply. (Doc. 20.) In it, Plaintiff clarified that he "is not disputing that the defendant[s] are[] providing treatment" but asserted that "the treatment is inadequate and is nothing more than 'active surveillance' [which] is equal to no treatment at all." (*Id.* at 2.) On the merits, Plaintiff focused primarily on whether his

1  Hepatitis-C qualifies as a "serious" medical condition for Eighth Amendment purposes.
2  (*Id.* at 3-5.)

3  On December 10, 2019, the Court issued an order denying Plaintiff's motion for a preliminary injunction. (Doc. 33.) First, the Court concluded that Plaintiff hadn't established a likelihood of success on the merits of his Eighth Amendment claims. (*Id.* at 7-8.) Second, and alternatively, the Court concluded that Plaintiff hadn't shown a likelihood of irreparable harm in the absence of a preliminary injunction because "[t]here is no indication that Plaintiff's hepatitis C is likely to progress to the point that he will suffer irreparable harm before the merits of his claims can be addressed in the course of this litigation." (*Id.* at 8.)

11  II.  Summary Judgment Standard

12  A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

18  If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, *i.e.,* a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, *i.e.,* the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see also* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

III.  Discussion

    A.  **Preliminary Matters**

As noted, the Court held in the screening order that Plaintiff had stated two different claims (a § 1983 claim for deliberate indifference and a state-law malpractice claim) against White in Count Three and that Plaintiff had stated a single claim (a § 1983 claim for deliberate indifference) against Centurion in Count Six. (Doc. 8 at 7.)

In the introductory paragraph of their motion, Defendants state that they are moving "for summary judgment on all of Plaintiff's claims against them." (Doc. 39 at 1.) However, in the body of the motion, Defendants only address the elements of the § 1983 claims. (*Id.* at 4-8.) No mention is made of the medical malpractice claim against White in Count Three. Although Defendants attempt to belatedly address the medical malpractice claim in their reply (Doc. 45 at 5-6), "the district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Thus, Defendants' motion will be denied, without prejudice, to the extent it seeks summary judgment on the medical malpractice claim against White in Count Three.

The Court further notes that, as to the § 1983 claims against White and Centurion, Defendants did not approach the summary judgment briefing process with the necessary level of detail. The thrust of Defendants' position is that, because the Court previously denied Plaintiff's request for a preliminary injunction, this means that Defendants must be entitled to summary judgment, too. (*See, e.g.,* Doc. 39 at 2 ["Because this Court has now been provided declaratory evidence and medical records that confirm Centurion medical

- 5 -

providers have determined that Plaintiff does not meet the criteria for the treatment he is requesting, and . . . this Court has already decided that Plaintiff is not likely to succeed on the merits and is not suffering irreparable harm, . . . summary judgment is also warranted on Plaintiff's claims against these Defendants . . . ."]; *id.* at 6 ["[T]his Court has already determined . . . that Plaintiff simply disagrees with his medical providers about whether he should be receiving treatment with direct acting anti-viral medications for his Hepatitis C . . . ."].) Thus, Defendants submitted very little evidence in support of their motion—they simply incorporated by reference the Orm declaration and other documents that were submitted in opposition to the preliminary injunction request. (Doc. 40.)

This approach is improper. A preliminary injunction is an extraordinary remedy that may be granted only when the movant—here, Plaintiff—makes several discrete showings, including a showing that success on the merits is not just possible, but likely (or, at a minimum, that there are substantial questions concerning the merits). In contrast, a party seeking summary judgment—here, Defendants—has the burden of demonstrating the absence of any genuine issues of material fact. A plaintiff's inability to satisfy the rigorous test for preliminary injunctive relief isn't tantamount to a finding that the plaintiff's claims cannot survive summary judgment.

In any event, because Defendants have sought a determination under Rule 56 as to whether they are entitled to summary judgment on the § 1983 claims asserted against them in Counts Three and Six, the Court will consider the evidence and arguments they have submitted.

B.     **Legal Standard**

Under the Eighth Amendment, a prisoner must demonstrate that a defendant acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective prong and a subjective prong. First, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could

result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Examples of a serious medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; to satisfy the knowledge component, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002). *See also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766

F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Finally, even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

C. **Analysis**

Defendants contend they are entitled to summary judgment because (1) "Plaintiff has failed to show that these Defendants' course of treatment was medically unacceptable or that they chose that course of treatment in a conscious disregard of an excessive risk to Plaintiff" (Doc. 39 at 6-7) and (2) "Plaintiff has failed to provide evidence of any damage . . . [or] any injury [that] is related to any action or inaction of Defendants" (*id.* at 7-8).

As for the first issue, Defendants' position hinges on their assertion that, when choosing whether to administer DAAs to prisoners with Hepatitis-C, they adhere to guidelines that "match[] the most recent HCV Guidelines as published in May 2018 by the AASLD (American Association for the Study of Liver Diseases), and by ISDA (Infectious Diseases Society of America)." (Doc. 40 ¶ 18; Doc. 18 at 14 ¶ 19. *See also* Doc. 39 at 8 ["Plaintiff has received continuous and appropriate assessment and treatment . . . based on . . . community standards"].) However, Defendants did not actually submit a copy of their guidelines or the AASLD/ISDA guidelines—they are not attached to Orm's declaration and were not submitted in support of Defendants' summary judgment motion. Moreover, Plaintiff disputes the factual accuracy of this assertion in his separate statement, claiming that the "AASLD guidelines . . . state that all infected Hep-C patients should be treated." (Doc. 43 at 3 ¶ 12.) On this record, Defendants are not entitled to summary judgment.[2]

---

[2] Moreover, several recent decisions appear to support Plaintiff's, rather than Defendants', characterization of the AASLD/ISDA guidelines. *See, e.g., Atkins v. Parker*, 412 F. Supp. 3d 761, 782 (M.D. Tenn. 2019) ("Plaintiffs[] rely upon the AASLD/IDSA Guideline . . . that favor administering DAAs to inmates with chronic HCV as soon as possible. Plaintiffs then reason that [the prison's] HCV treatment policies fall short of the prevailing standard of care because they do not guarantee immediate, universal treatment of all HCV inmates with DAAs."); *Buffkin v. Hooks*, 2019 WL 1282785, *7 (M.D.N.C. 2019) ("[T]he AASLD/IDSA Guidance itself . . . reflects, at least in part, the laudable

As for the second issue, the Court is again hamstrung by an undeveloped record. Plaintiff's complaint, which was executed under penalty of perjury (and which therefore may be considered for summary judgment purposes), alleges that the lack of adequate treatment has resulted in a tangible worsening of Plaintiff's condition: "The . . . refusal to place me on medication to cure my [Hepatitis-C] has caused fibrosis stage 2 and stage 2 inflammation of my liver." (Doc. 1 at 5.) In response, Defendants offer the Orm declaration, which asserts in conclusory fashion that these are "minimal" degrees of fibrosis and inflammation that don't qualify for DAAs under Centurion's treatment criteria. (Doc. 40 ¶¶ 13, 16-17.) But this assertion doesn't address Plaintiff's point—that his condition has worsened due to the lack of care—and the allusion to Centurion's criteria is unpersuasive in light of the unresolved questions concerning whether those criteria actually track the AASLD/IDSA guidelines.

In short, Defendants have not met their burden of showing they are entitled to judgment as a matter of law. Nonetheless, because Defendants may be able to present additional facts and arguments supporting their position, they will be granted leave to file a second summary judgment motion. *Hoffman v. Tonnemacher*, 593 F.3d 908, 911-12 (9th Cir. 2010) (district courts have discretion to permit successive motions for summary judgment).

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' motion for summary judgment (Doc. 39).

(2) Defendants' motion for summary judgment (Doc. 39) is **denied** without prejudice.

---

medical goal of eradicating HCV in society as a whole . . . [and] state that 'HCV DAA therapy for chronic HCV is now logistically feasible within the prison setting and would aid the HCV elimination effort.' While these goals are commendable and desirable, they are also aspirational objectives and thus do not provide a standard for evaluating deliberate indifference in the prison system."). This underscores why it would be inappropriate to grant summary judgment to Defendants based on their characterization of guidelines they have not actually submitted for the Court to review.

1       (3)    Defendants may file another dispositive motion by the deadline for filing dispositive motions outlined in the Scheduling Order. (Doc. 30.)

Dated this 8th day of June, 2020.

                                                        _____
                                                         Dominic W. Lanza
                                                         United States District Judge